CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Dennis Price, Esq., SBN 279082
8033 Linda Vista Road, Suite 200
San Diego, CA 92111
Phone: (858) 375-7385
Fax: (888) 422-5191
russ@potterhandy.com

Michelle Uzeta, Esq., SBN 164402
uzetalaw@gmail.com
michelleu@potterhandy.com
710 S. Myrtle Ave., #306
Monrovia, CA 91016
Ph: (858) 375-7385

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Walter Pisarczyk and Pat Pisarczyk**,<br><br>Plaintiffs,<br><br>v.<br><br>**SR Mutual Investment Corp.; Shadow Mountain Resort Investment Group LLC;** and Does 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**Complaint for Injunctive Relief and Damages for Violations of:**<br><br>1. Title III of the American's With Disabilities Act, 42 U.S.C. §12182 *et seq*.;<br>2. California's Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq*.; and<br>3. California's Disabled Persons Act, Cal. Civ. Code § 54.1 *et seq*. |

1

Complaint

## INTRODUCTION

1. Plaintiffs Walter Pisarczyk ("Walter") and Pat Pisarczyk ("Pat") (collectively "Plaintiffs") bring this lawsuit alleging that Defendants SR Mutual Investment Corp., Shadow Mountain Resort Investment Group LLC and Does 1-10 ("Defendants") discriminated against them on the basis of Walter's disability in the operation of the pickleball facilities at the Palm Desert Resort Country Club, in violation of the Americans with Disabilities Act ("ADA") and related state statutes.

2. As a result of Defendants' discriminatory acts and omissions as alleged herein, Plaintiffs have suffered, and will continue to suffer, damages, and have been, and will continue to be, prevented and deterred from visiting the Club and availing themselves of the amenities provided there.

3. Through this lawsuit, Plaintiffs seek an injunction requiring Defendants to take the steps required to ensure that they, and similarly situated persons, have "full and equal" access to Defendants' facilities as required by law.

4. Plaintiffs also seek damages and their reasonable attorneys' fees, and the costs and litigation expenses incurred in enforcing their civil rights.

## PARTIES

5. Plaintiff Walter Pisarczyk is, and at all times relevant herein was, an individual.

6. Plaintiff Pat Pisarczyk is, and at all times relevant herein was, an individual.

7. Defendant SR Mutual Investment Corp. is, and at all times relevant herein was, a corporation organized under the laws of the State of California, with its principal place of business located in Whittier, California.

8. Defendant Shadow Mountain Resort Investment Group LLC is,

and at all times relevant herein was, a corporation organized under the laws of the State of California, with its principal place of business located in Palm Desert, California.

9. Plaintiffs are currently unaware of the true identities of DOES 1-10, inclusive, and will seek leave to amend this Complaint when their true names, capacities, connections, and responsibilities are ascertained.

10. Plaintiffs are informed and believe that each of the Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, franchiser, franchisee, lessor, lessee, joint venturer, parent, subsidiary, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and was at all times acting and performing, or failing to act or perform, within the course and scope of such similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

**JURISDICTION & VENUE**

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the ADA.

12. Pursuant to pendant jurisdiction, attendant and related causes of action arising from the same facts are also brought under California law, including the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51 et seq. and the Disabled Persons Act ("CDPA"), Cal. Civ. Code § 54.1 *et seq.*,

Complaint

both of which expressly incorporate the ADA. Cal. Civ. Code §§ 51(f), 54.1(d).

13. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiffs' causes of action arose in this district.

## FACTUAL ALLEGATIONS

14. Walter is, and at all times relevant herein was an individual with physical impairments. Walter has degenerative back, knee and hip conditions, as well as foot drop of the left foot.

15. Walter's physical impairments significantly limit his mobility.

16. Walter uses a cane to maintain mobility and balance and sustain a walk.

17. Pat is Walter's wife.

18. The Palm Desert Resort Country Club (the "Club") is located at 77-333 Country Club Drive in the City of Palm Desert, California.

19. The amenities of the Club include pickleball courts.

20. Members of the public can play pickleball at the Club for a fee.

21. On information and belief, the drop-in fee to play pickleball at the Club is five dollars per person.

22. On information and belief, the pickleball courts at the Club were constructed in or about early 2019.

23. Defendant SR Mutual Investment Corp. is, and at all times relevant herein was, the owner, operator, lessor, and/or lessee of the Club.

24. Defendant Shadow Mountain Resort Investment Group LLC is, and at all times relevant herein was, the owner, operator, lessor, and/or lessee of the pickleball courts at the Club.

Complaint

25. Walter is an avid and skilled pickleball player. Walter plays pickleball multiple times a week for multiple hours at a time.

26. Plaintiffs travel to Southern California area annually to, among other things, play pickleball.

27. In late December 2019 to early January 2020, Plaintiffs took an extended trip to Southern California to vacation and play pickleball.

28. For three days Plaintiffs played pickleball at the Fritz Burns courts in La Quinta. They were later referred to the Club, where the pickleball players are known to be more competitive.

29. On January 3, 2020 Plaintiffs visited the Club to play pickleball. It was their first time visiting the Club.

30. While waiting to check-in at the pickleball courts, Walter stood with his cane behind him, leaning on it for support.

31. Plaintiffs were eventually approached by a female believed to be Charis McFarlane ("Charis").

32. Plaintiffs and Charis engaged in a pleasant conversation during which, among other things, the pickleball courts were confirmed open for play.

33. Plaintiffs indicated to Charis that they wanted to play pickleball. Charis began moving towards the check-in area to check the couple in.

34. Plaintiffs followed Charis, at which point, Charis became aware of Walter's use of a cane for the first time.

35. Charis' tone with Plaintiffs changed immediately once she saw Walter's cane. She emphatically asked, "You are not going to play with that cane here, are you?"

36. Walter stated to Charis " I have been playing with a cane for the 5 years or so that I have been playing pickleball and no one has had a problem with it."

Complaint

37. Charis responded with words to the effect of "these are my courts and you are not going to play with that cane here. I am not going to buy you a new hip if you fall!"

38. Walter told Charis that he does not fall. Charis then responded with words to the effect of "I don't care. You are not going to play with that cane here."

39. Walter was offended and taken aback. Walter again explained to Charis that he was an experienced pickleball player.

40. Walter also explained to Charis that he had a background in civil rights and knew his rights under the ADA. Walter stated to Charis that she should "not want to go down that road" of not allowing him to play because of his disability and use of a cane.

41. Charis again responded with words to the effect of: "I don't care. I control who plays here. You are not going to play here with that cane."

42. A male witness to the conversation, who on information and belief also works at the Club, then jumped into the conversation on Walter's behalf and stated to Charis words to the effect of "you should let him play, we have people falling all the time here that don't use a cane" and "he told you he has a background in the ADA. It would be cheaper for you to buy him a new hip then it would to pay him for an ADA complaint."

43. Charis responded to the witness with words to the effect of "I don't care. These are my courts. I decide who plays here and he is not going to play here with that cane."

44. Charis also told the witness that she did not want Walter on the pickleball courts for fear that he may either hit or cause someone else to fall with his cane. Walter stated in response to Charis that in the over five years he had been playing pickleball with a cane, no one had ever come close to it or been hit with it.

Complaint

45. During their back and forth discussion Walter had offered to sign a liability waiver, believing that might resolve Charis' issue. After the interjections from the other Club employee Charis moved towards her work/desk area, pulled out a stack of blank papers and stated to the employee, words to the effect of "I don't have a waiver for him to sign, and I wouldn't know what to put in one."

46. Plaintiffs moved to the desk in front of Charis at which point she told them that she would have to charge them each $10 to play at the Club (an amount that is, on information and belief, double the regular drop-in fee).

47. Walter told Charis "fine, we pay that all the time," which appeared to frustrate Charis. Charis continued to make it evident she did not want to allow Plaintiffs on the courts.

48. Recognizing Charis' continuing reluctance to allow Plaintiffs to play pickleball at the Club, Walter explained to Charis that Plaintiffs had been playing at the Fritz Burns courts for the previous three days and had not fallen once. Walter then offered to write up a waiver for Charis if she wanted.

49. Charis then responded to Walter words to the effect of "they have some really good players [at Fritz Burns], maybe you should go back there and play."

50. At that point, Pat said to Walter, "look, [Charis] is not going to let us play so let's go." Plaintiffs proceeded to make their way towards the exit.

51. On the way out, Walter sarcastically said to Charis, "thanks for making us feel welcome at your facility, especially since I am disabled." Charis snapped back "you're welcome!"

52. Plaintiffs were shocked at the way they were treated. Pat was in very emotional and in tears. Plaintiffs sat in the car for a few minutes to collect themselves and then decided to return to Fritz Burns to play pickleball.

Complaint

53. Later in the day on January 3, 2020, Walter attempted to lodge a grievance with the Club regarding the way Plaintiffs were treated.

54. Walter was informed by Club employees that Shadow Mountain Resort leases and/or operates the pickleball courts at the Club, and was referred to Michael McFarlane, the manager and co-owner of Shadow Mountain Resort to voice his grievances.

55. Michael McFarlane is, on information and belief, a relative of Charis McFarlane.

56. Walter complained to Mr. McFarlane about Charis and the discrimination he experienced at the Club.

57. Mr. McFarlane told Walter he had heard what had happened and indicated that Charis would like to apologize. Walter indicated to Mr. McFarlane that based on the way Charis spoke to and treated him, he knew any apology would be forced and insincere. Walter told Mr. McFarlane that Charis was rude, arrogant and demeaning towards Plaintiffs and that he [Walter] was calling to let him know about Charis treats people with disabilities.

58. Mr. McFarland told Plaintiffs they could go back to the Club the next day to play for free. However, Plaintiffs were deterred from returning to the Club because of their experience with Charis and her attitude towards Walter as an individual with disabilities. Plaintiffs felt unwelcome at the Club and Walter was made to feel like a second class citizen. Plaintiffs feared they if they returned, they would only be subjected to additional harassment, discrimination and humiliation.

59. The experience of being excluded from and/or denied access to the pickleball courts and dealing with dealing Charis caused both Plaintiffs to experience difficulty, distress, frustration, inconvenience, embarrassment and humiliation.

Complaint

60. On information and belief, the Club has neither adopted nor implemented non-discrimination policies for use of the pickleball courts.

61. On information and belief, the Club has not provided disability sensitivity training to its employees or trained them on the rights of people with disabilities and how to avoid discrimination.

62. On information and belief, Charis continues to control access to the pickleball courts at the Club.

63. On information and belief, Charis has never undergone disability sensitivity training or training them on the rights of people with disabilities and how to avoid discrimination.

64. Plaintiffs have been deterred from returning to Club since the January 3, 2020 incident due to his experience and the likelihood that such discrimination will occur again given Charis' continued role at the Club and the Defendants' failure to develop and implement non-discrimination policies and conduct employee training. Plaintiff has a continuing interest in and need for judicial protection.

65. Plaintiffs plans to return to Palm Desert and the Club in or about January 2021, but until Defendants' discriminatory policies are modified and owners and employees trained, Plaintiffs will continue to be denied full and equal access to the Club's pickleball courts and will suffer ongoing discrimination and damages as a result.

66. The nature of Defendants' discrimination, as alleged herein, constitutes an ongoing violation and violation that is capable of repetition, and unless enjoined by this Court, will result in ongoing and irreparable injury to Plaintiffs and other similarly disabled persons.

Complaint

# FIRST CAUSE OF ACTION

## Title III of the Americans with Disabilities Act

### 42 U.S.C. § 12101 et seq.

67. Plaintiffs re-plead the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately re-pled.

68. Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

69. Title III also explicitly prohibits associational discrimination: "It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E). This statutory provision is implemented by 28 C.F.R. § 36.205, which contains the same language. *See* 28 C.F.R. § 36.205.

70. Walter is, and at all times relevant herein was a person with a "disability" as that term is defined under the ADA and its implementing regulations. 42 U.S.C. § 12102; 28 C.F.R. § 36.104.

71. Pat is an individual known to have a relationship and association with Walter.

72. Places of exercise and recreation are among the "private entities" which are considered "public accommodations" for purposes of the ADA. 42 U.S.C. § 12181(7)(L).

73. The pickleball courts at the Club are places of recreation and therefore "place of public accommodation" under Title III of the ADA.

Complaint

74. Defendants are private entities that own, operate and/or lease the pickleball courts at the Club, and therefore must comply with the anti-discrimination provisions of the ADA.

75. In acting as herein alleged, Defendants have discriminated against Walter on the basis of his disability in violation of Title III of the ADA. Defendant's discriminatory conduct includes, *inter alia*:

   a. Directly, or through contractual, licensing, or other arrangements, excluding or denying Walter the goods, services, facilities, privileges, advantages, accommodations, and/or opportunities offered at the Club, on the basis of his disability. 42 U.S.C. § 12182(b)(1)(A)(i);

   b. Providing Walter goods, services, facilities, privileges, advantages, and/or accommodations that are not equal to those afforded non-disabled individuals. 42 U.S.C. § 12182(b)(1)(A)(ii);

   c. Directly or through contractual or other arrangements, utilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability. 42 U.S.C. § 12182(b)(1)(D)(i).

   d. Imposing or applying eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying their goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(i);

   e. Failing to make reasonable modifications in policies, practices, or procedures, when such modifications are

Complaint

necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to Plaintiff, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii); and

f. Imposing a surcharge on people with disabilities as a condition of access or use of the Club. 28 C.F.R. § 36.301(c).

76. In acting as herein alleged, Defendants have also excluded or otherwise denied equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to Pat because of her relationship and association with Walter, a disabled person. 42 U.S.C. § 12182(b)(1)(E); 28 C.F.R. § 36.205. As herein described, Pat's injury resulting from Defendants' discrimination is specific, direct, and separate from the injuries caused to and experienced by Walter.

77. Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188 and 42 U.S.C. § 12205, Plaintiffs pray for judgment as set forth below.

## SECOND CAUSE OF ACTION
### Unruh Civil Rights Act
### California Civil Code § 51 *et seq.*

78. Plaintiffs re-plead the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately re-pled.

79. The Unruh Act guarantees that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the

jurisdiction of the State of California. Cal. Civ. Code § 51(b).

80. The Unruh Act also provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f).

81. Walter is, and at all times relevant herein was, a person with a disability under California law. Cal. Gov. Code § 12926.

82. The Club is a business establishment and, as such, must be operated by Defendants in compliance with the provisions of the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq*.

83. In acting as herein alleged, Defendants have violated the Unruh Act by, *inter alia*, denying, or aiding or inciting the denial of, Walter's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered at the Club.

84. In acting as herein alleged, Defendants have also violated Plaintiffs' rights under the Unruh Act by denying, or aiding or inciting the denial of, Plaintiff's right to equal access arising from the provisions of the ADA.

85. Defendants' duties under the Unruh Act are mandatory and long-established. Defendants are deemed to have had knowledge of its duties at all times relevant herein; its failure to carry out said duties as alleged herein was willful and knowing and/or the product of deliberate indifference. Treble damages are warranted.

86. Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 52, Plaintiffs pray for judgment as set forth below.

//
//
//
//
//

Complaint

# THIRD CAUSE OF ACTION

## California Disabled Persons Act

## California Civil Code § 54 *et seq.*

### *(Statutory damages and attorneys' fees only)*

87. Plaintiffs re-plead the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately re-pled.

88. The CDPA provides that "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, … and privileges of all … places of public accommodation, … , and other places to which the general public is invited" Cal. Civ. Code § 54.1(a)(1).

89. A violation of the ADA is also a violation of the CDPA. See Cal. Civ. Code, § 54.1(d).

90. The pickleball courts at the Club are a place of public accommodation to which the general public is invited and, as such, must be operated by Defendants in compliance with the provisions of the CDPA.

91. Defendants have violated the CDPA by, *inter alia*, denying and/or interfering with Plaintiffs' admittance to or enjoyment of the public facilities at the Club based on Walter's disability.

92. Defendants have also violated the CDPA by denying, or aiding or inciting the denial of, Plaintiffs' right to equal access arising from the provisions of the ADA.

93. Defendants' duties under the CDPA are mandatory and long-established. Defendants are deemed to have had knowledge of their duties at all times relevant herein; their failure to carry out said duties as alleged, was willful and knowing and/or the product of deliberate indifference. Treble damages are warranted.

Complaint

94. Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 54.3(a), Plaintiffs pray for statutory damages and attorneys' fees as set forth below.

# PRAYER

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Issue an injunction pursuant to the ADA and the Unruh Act ordering Defendants to:
    a. Modify their policies and practices to avoid discrimination based on an individual's disability; and
    b. Train their staff and management regarding the rights of people with disabilities and their obligation to avoid discrimination.

    **Note:** *Plaintiff is not invoking section 55 of the California Civil Code and is **not** seeking injunctive relief under the CDPA.*

2. Award Plaintiff general, compensatory, and statutory damages in an amount within the jurisdiction of this court;
3. Award Plaintiff attorneys' fees, litigation expenses and costs of suit, as provided by law; and
4. Award such other and further relief as the Court may deem just and proper.

Dated: May 14, 2020         CENTER FOR DISABILITY ACCESS

                            By: _____
                                Russell Handy
                                Attorneys for Plaintiff

Complaint